```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

ALONZO FAULK,

              Plaintiff,         **DECISION AND ORDER**
    -vs-                               **No. 09-CV-6377(MAT)**

Comm. BRIAN FISHER, et al.,

              Defendants.

## I. Introduction

Proceeding pro se, plaintiff Alonzo Faulk ("Faulk" or "Plaintiff"), filed the instant action pursuant to 42 U.S.C. § 1983 against defendants alleging constitutional violations which occurred while he was an inmate in the custody of the New York Department of Corrections and Community Supervision ("NYSDOCCS"). Defendants have moved for summary judgment, and Plaintiff has filed an application styled as a cross-motion for summary judgment. For the reasons set forth below, Defendants' motion is granted, and the complaint is dismissed. Plaintiff's cross-motion is denied.

## II. Background

Plaintiff's supporting allegations cover numerous, disparate topics. To avoid unnecessary repetition, the facts pertinent to the alleged constitutional violations will be set forth below in the sections addressing Plaintiff's specific claims.

**III. General Legal Principles**

    **A.**    **42 U.S.C. § 1983**

In order to state a claim under 42 U.S.C. § 1983, the plaintiff must establish the following elements: (1) conduct attributable at least in part to a person acting under color of state law, and (2) deprivation, as the result of the challenged conduct, of a right, privilege, or immunity secured by the Constitution or laws of the United States. Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir.1993).

    **B.**    **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

Initially, the moving party must show that there is "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving

party has carried its burden under F.R.C.P. 56, the opposing party must set forth "specific facts showing that there is a genuine issue for trial[,]" FED. R. CIV. P. 56(e), and must introduce evidence beyond the mere pleadings to show that there is an issue of material fact concerning "an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III. Analysis

### A. Lack of Personal Involvement

The § 1983 plaintiff must adequately demonstrate "personal involvement of defendants in alleged Constitutional deprivations." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Defendants argue that the supervisory defendants (Commissioner Fischer, Superintendent Kadien, and Inspector General Roy) were not personally involved in any of the alleged constitutional violations, and therefore the claims against them must be dismissed. The Court agrees.

Plaintiff contends that these individuals became involved when they received mail from him and when he commenced two administrative proceedings in Erie County (which subsequently were dismissed for failure to state a claim). Contrary to Plaintiff's contention, liability is not conferred upon a supervisory official based upon his mere receipt of a prisoner's letter or his denial of a grievance. See Warren v. Goord, 476 F. Supp.2d 407, 413 (S.D.N.Y.

2007) ("In the complaint, plaintiff alleges only that Eagen denied his grievance. However, plaintiff does not explain how a denial of a grievance violates plaintiff's constitutional or federal rights so as to state a claim under § 1983. Because plaintiff has failed to allege any relevant facts that would give rise to a failure to protect claim, and because he has not alleged that Eagen violated any of his other rights, the Court dismisses the claim against Eagen.") (internal citation to record omitted).

### B. Deliberate Indifference to Plaintiff's Medical and Dental Needs

There are two elements to a prisoner's claim that officials violated his Eighth Amendment right to receive medical care: The plaintiff must show that he had a "'serious medical condition' and that it was met with 'deliberate indifference.'" Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) (quotation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." Smith v. Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003). The standard applies equally to alleged deprivations of dental care. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

### 1. Dental Claim (Complaint, § III, "Injuries")

Plaintiff claims that he "suffered damages to his mouth and implants that were left exposed by the DOCS failure to meet [his] dental needs. Which resulted in an infection and constant pain and bleeding from 12/13/07-7/21/09." Complaint ("Compl."), Section III ("Injuries"). Defendants argue that the dental indifference claim against all of the named defendants must be dismissed because it fails to allege their personal involvement in the claimed constitutional deprivations. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (stating that it is well settled that "personal involvement . . . is a prerequisite to an award of damages under section 1983"); Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) (Even when a plaintiff alleges supervisory liability, a § 1983 action requires a showing of personal involvement and cannot rest on respondeat superior.).

As Defendants point out, Plaintiff has not identified which of the named defendants failed to meet his dental needs. Significantly, none of the twenty named defendants is a dental provider. Furthermore, Plaintiff has not alleged which of the defendants knew or should have known about his dental conditions. Thus, he has failed to demonstrate their personal involvement.

Moreover, the complaint itself is defective inasmuch as Faulk has failed to allege that the named defendants were personally responsible for the claimed denial of appropriate dental care. See

Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987) ("Having failed to allege, as they must, that these defendants [named in the complaint] ere directly and personally responsible for the purported unlawful conduct, their complaint is 'fatally defective' on its face.") (quoting Black v. United States, 534 F.2d 524, 527-28 (2d Cir. 1976); other citation omitted).

### 2. Medical Claim (Complaint, ¶¶ 11, 14, 54, 57; § III, "Injuries")

Faulk contends that on May 23, 2008, defendant Patrick Kelleher ("Kelleher") prohibited him from using the restroom during a counseling program which Kelleher was leading. Faulk states that he told Kelleher he was taking medication (Doxazosin) which caused him to have to urinate more frequently, but Kelleher refused to allow him to use the restroom. When he could no longer control the urge to urinate, Faulk went to the bathroom, and Kelleher seized his I.D. card. Later, in the presence of Corrections Officer Michael Gian, Kelleher told Faulk to get a medical pass to use the restroom.

Faulk also contends that Erin Regan ("Regan"), another counseling program leader, prevented him from using the bathroom when he needed to as the result of his medication. Regan also instructed Faulk to provide a doctor's note regarding his need to use the restroom more frequently. Faulk asserts that these actions

by Regan and Kelleher led to the development of a hernia (for which he received surgery).[1]

Defendants observe that Faulk has never supplied a doctor's note to Kelleher, Regan, or any other NYSDOCCS official regarding this medication and the side-effect of frequent urination. Furthermore, and most importantly, Faulk has failed to demonstrate a causal connection between Kelleher's and Regan's denial of the opportunity to use the bathroom on certain occasions and the development of the hernia. See Gibeau v. Nellis, 18 F.3d 107, 110 (2d Cir. 1994) ("To recover compensatory damages under Section 1983, a plaintiff must prove that his injuries were proximately caused by the constitutional violation.") (internal citation omitted). Apart from his own conclusory assertions, Faulk has failed to offer any competent medical evidence to support his contentions. "Because a motion for summary judgment supported by competent evidence may not be defeated by conclusory allegations or unsubstantiated speculation," Pabon v. Goord, No. 99 Civ. 5869(THK), 2003 WL 1787268, at *17 (S.D.N.Y. Mar. 28, 2008), the claims of deliberate medical indifference must be dismissed.

---

[1] Plaintiff does not assert any claims of deliberate indifference in connection with the hernia surgery itself.

**C.     Erroneous Program-Placement (Complaint, ¶¶ 1-5, 19, 31-32, 47-50)**

Faulk contends that defendants Patricia Allen, Deborah Cotton, Wendy Samick, Thomas Dzierba, and Leslie McNamara were responsible for (1) erroneously placing him into a DWI (Driving While Intoxicated) program instead of an ASAT (Alcohol and Substance Abuse Treatment) program, and (2) failing to give him credit for time spent in ASAT.

Even assuming that he should not have been placed in the DWI program,[2] it is unclear what harm, if any, Faulk suffered as the result. With regard to the time-credit for the ASAT program, Faulk ultimately received the credit after he requested it in March 2009. The ASAT program-completion was considered when Faulk subsequently was granted parole on July 28, 2009. In sum, Faulk has failed to demonstrate any cognizable injury as the result of Defendants alleged actions in connection with the DWI program and the ASAT program.

**D.     Sexual Harassment (Complaint, ¶¶ 7-11, 15, 24-26, 33, 37)**

Faulk contends that an inmate named David Williams sexually harassed him by taunting him with a black, penis-shaped object (which turned out to be a pinecone); sniffing one of his towels

---

[2] At the time of the complained-of incidents, Faulk was serving concurrent sentences for convictions of fourth degree criminal possession of a controlled substance and aggravated unlicensed operation of a vehicle.

after Faulk had used it to shower; grabbing Faulk's buttocks while Faulk was sleeping on his stomach; and asking if Faulk wanted to see a blister Williams' had allegedly sustained on his buttocks by sitting on the radiator. Faulk contends that Kelleher, Rolly Howard, Thomas Millitello, and Renee Wilry failed to investigate his allegations against Williams solely because Williams was white and Faulk was black.

"Undeniably, where a supervisory employee knows or reasonably should know of the existence of facts revealing a constitutional deprivation and, by virtue of his or her failure to properly investigate and remediate the matter, perpetuates or fails to prevent additional constitutional violations despite authority to do so, that defendant may face liability under section 1983." Toole v. Connell, No. 9:04-CV-0724 (LEK/DEP), 2008 WL 4186334, at *7 (Sept. 10, 2008) (citing Colon v. Coughlin, 58 F.3d at 873; Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989) (indicating that supervisory liability was proper where "an official has actual or constructive notice of unconstitutional practices" by his or her subordinates "and demonstrates gross negligence or deliberate indifference by failing to act")).

However, documents provided by Defendants during discovery refute Plaintiff's claim that prison officials failed to investigate his allegations. In particular, the Court notes the

memorandum from Capt. J. Kurtzworth to DSS J. Hessel dated July 24, 2008, regarding Faulk's complaint of sexual harassment:

> Sergeant Militello conducted an investigation into allegations presented by Faulk 07A6450 who stated that he has been sexually harassed by inmate Williams 07A6605. As a result of this investigation Sergeant Militello concluded that Faulk had fabricated the incident in order to justify his acts of striking Williams.[3] Faulk further stated that he had reported the incidents of sexual harassment to P.A. Howard and Counselor Kelleher. P.A. Howard denied Faulk's allegation. Counselor Kelleher is currently on lock-out status and is not available to respond to Faulk's allegation.

Logue Decl., Ex. H at 3. In addition, Wilry, from the Inspector General's Office, also conducted an investigation, which revealed the allegations to be unfounded. Thus, Plaintiff's failure-to-investigate claim is fatally defective as a matter of law.

### E.  Misbehavior Reports (Complaint, ¶¶12-13, 30, 39, 42, 51-56, 59-60)

#### 1.  Retaliation

Faulk asserts that defendants Lukaszek, Millitello, Kull, Regan, Kelleher, Zaccagnino, Dzierba, Allen, and Gian were involved in the issuance of inmate misbehavior reports against Faulk on May 23, 2008; July 4, 2008; July 31, 2008; and October 21, 2008. See Logue Decl., Exs. D, E, F & G. Faulk appears to be claiming

---

[3] A Fight Investigation Form was filed as the result of Faulk punching Williams. Williams stated that he tried to wake Faulk up for the count, and Faulk got up and punched Williams. According to Faulk, he was provoked because Williams had grabbed his buttocks. An inmate who wished to remain anonymous stated to Millitello that Williams' story was accurate. See Declaration of Toni E. Logue, Esq., dated April 22, 2011 ("Logue Decl.") (Dkt. #23-5), Ex. H at 6.

that the misbehavior reports were issued in retaliation against him, as he states that "[t]he misbehavior reports against [him] began when [he] exercised [his] right to redress a wrong[4] through the grievance process, which originated from [his] initial interview with correction counsel Ms. Allen on December 14, 2007," Petitioner's Motion for Summary Judgment, ¶8.

"[A] claim for relief may be stated under section 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights." Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) (citing Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam)). "Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right." Colon v. Coughlin, 58 F.3d at 872 (citing Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988)).

The plaintiff "bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating fact in the prison officials' decision to discipline plaintiff." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citing Mount Healthy Sch. Dist. v. Doyle, 429

---

[4] The wrong to which he is referring is his allegedly erroneous placement in a DWI program instead of an ASAT program. See id.

U.S. 274, 287 (1977)). The plaintiff must establish that, but for his exercise of a protected right, the alleged wrongful action would not have been taken. Haymes v. Montanye, 547 F.2d 188, 191 (2d Cir. 1976).

Here, Faulk has offered nothing but unsubstantiated, conclusory assertions that the defendants possessed a retaliatory animus towards him. See R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984) ("While doubts must be resolved in favor of the party opposing the motion, the opposing party must provide 'concrete particulars' showing that a trial is needed, and '[i]t is not sufficient merely to assert a conclusion without supplying supporting arguments or facts in opposition to that motion.'") (quoting SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978)). Not only has Faulk failed to demonstrate that any of the defendants harbored a retaliatory motive against him, he has failed to show that his protected conduct of filing grievances was a substantial or motivating factor in the issuance of the four misbehavior reports. See Davidson v. Chestnut, 193 F.3d 144, 148 (2d Cir. 1999) ("At the summary judgment stage, if the undisputed facts demonstrate that the challenged action clearly would have been taken on a valid basis alone, defendants should prevail."). The record indicates that Defendants would have taken the same actions regardless of Faulk's filing of grievances. Therefore, his claim of retaliatory treatment fails as a matter of law.

### 2. Due Process Violations

Faulk alleges due process violations in connection with two of the misbehavior reports. First, he claims that Hearing Officer Zaccagnino erroneously failed to call one of his requested witnesses. However, the record reveals that Faulk agreed that this witness had not been involved in the incident giving rise to the misbehavior report. Declining to call an individual who was not a percipient witness or did not have personal knowledge does not violate an inmate's due process rights. See Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 (2d Cir. 1991) ("[A] prisoner's request for a witness can be denied on the basis of irrelevance or lack of necessity."); accord Scott v. Kelly, 962 F.2d 145, 147 (2d Cir. 1992).

Second, Faulk contends that he was erroneously convicted of causing a disturbance. See 7 N.Y. COMP. CODE R. & REGS. § 270.2, Institutional Rules of Conduct, Rule 104.13 ("An inmate shall not engage in conduct which disturbs the order of any part of the facility. . . . ."). The conviction was based upon the misbehavior report filed by Counselor Regan after Faulk disobeyed her order to wait to go to the bathroom until the scheduled break in the ASAT session. According to Regan, when Faulk left the area, the other attendees became chaotic because of comments that he made, and she had to dismiss the group.

Faulk apparently contends that the misbehavior report and Regan's testimony did not constitute sufficient evidence to support the guilty finding. However, the Supreme Court has held that the requirements of due process are satisfied if "some evidence" supports the disciplinary finding. Superintendent v. Hill, 474 U.S. 445, 454 (1985). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the" hearing officer. Id. at 455-56. New York state courts have found that a misbehavior report, together with the eyewitness testimony of its author, meets the state law standard of "substantial evidence" to support a determination of guilt in the prison disciplinary context. E.g., Rossi v. Portuondo, 277 A.D.2d 615, 615 (3d Dept. 2000) (citations omitted). District courts in this Circuit have found that proof which satisfies New York's "substantial evidence" standard necessarily satisfies less demanding "some evidence" test applied under Hill. E.g., Rossi v. Goord, No. 9:00-CV-1521 (LEK/DEP), 2006 WL 2811505, at *12 (N.D.N.Y. Sept. 28, 2006) (citing Alicea v. Howell, 387 F. Supp.2d 227, 232-33 (W.D.N.Y. 2005)). Faulk's claim thus fails as a matter of law.

**F.   Interference with Plaintiff's Filing of Grievances**

Faulk contends that defendants Kadien, Kelleher, Lukaszkek, Dzierba, Hessel, Janish, LaGraves, Trzcinski, and McNamara interfered with five grievances that he filed in 2008. Some of

these grievances were affirmed, in whole or in part; some were denied. With regard to the grievances that were denied, as Defendants point out, Plaintiff took full advantage of the administrative corrective processes available to him. See Logue Decl., Exs I, K, L, M, N, & O. The cases upon which Plaintiff relies are inapposite inasmuch as they relate to instances in which the inmate was prevented by prison officials from pursuing his administrative appeals. Moreover, Plaintiff has failed to specify how the individual defendants "interfered" with his grievances. This claim is factually and legally baseless.

### G.   Time Allowance Committee Review

Plaintiff argues that defendant Hessel denied him the right to be present at the TAC review hearing on November 25, 2008. The Court assumes for purposes of this claim that the procedural due process rights which accrue to prisoners who appear at disciplinary hearings apply to prisoners who appear before the TAC. See Roston v. Selsky, No. 00 CIV. 8994 (HB), 2001 WL 1297797, at *4 (S.D.N.Y. Oct. 25, 2001) ("[N]o case law, in this Circuit or elsewhere, discusses the procedural due process rights that accrue to prisoners who appear before time allowance committees (as opposed to disciplinary hearings), but it is a distinction without a difference. TACs are part of the disciplinary process, and their recommendations are a necessary step in the deprivation of good

time credits, which, as discussed above, implicates procedural due process.").

Faulk's allegations regarding this claim are disjointed and do not clearly explain how it came to pass that he did not appear at the TAC hearing. The Court surmises from the documentation Faulk has provided that he refused to attend the hearing because he did not want to be placed in mechanical restraints due to certain shoulder injuries. See Declaration of Alonzo Faulk dated July 17, 2011 ("Faulk Decl.") (Dkt. #32), Ex. P (Inmate Grievance Complaint).[5] Even assuming that there was a procedural due process error, it is subject to harmless error review. See Pilgrim v. Luther, 571 F.3d 201, 206 (2d Cir. 2009) (violations of a prisoner's qualified right to inmate legal assistance in preparing a defense in advance of his disciplinary hearing was reviewed for harmless error) (citing Powell v. Coughlin, 953 F.3d 744, 750 (2d Cir. 1991)).

Here, the TAC determined that Faulk was required to "complete ART [Aggression Replacement Training], maintain clean disciplinary

---

[5]

Faulk states that he requested to speak to a sergeant on November 25, 2008, regarding, inter alia, his scheduled TAC hearing. He goes on to say that he has a "medical recorded shoulders [sic] injury/complaints" which "prohibits [him] from being placed in mechanical restraints behind [his] back for an extended period. . . . Having explained this to the officer and point out G.C.F. Aug. 08 SHU inmate procedures (front/back) I was denied [his] right to attend T.A.C. hearing." Faulk Decl., Ex. P. The action requested was to "be treated equally and afforded equal protections as those who are permanently disabled." Id. The "Report of Time Allowance Committee Review" indicates, "Inmate refused to be seen." See id.

[record] and positive participation in programs." Faulk Decl., Ex. P. Plaintiff was informed that he could "write for reconsideration at the completion of his programs." Id. When Plaintiff completed ART, one month of good time credit was restored, and he was released to parole on July 28, 2009. Because Plaintiff was required to complete ART before being reconsidered by the TAC, his presence at the November 25, 2008, hearing would not have changed the outcome. Thus, any error was harmless because "there is no basis in the record upon which a factfinder could conclude that plaintiff was prejudiced as a result." Crenshaw v. Sciandra, 766 F. Supp.2d 478, 483 (W.D.N.Y. 2011).

### H. Interference With Legal Mail (Complaint, ¶¶ 34-36, 38, 40, 43-45)

Plaintiff contends that Andrew Kull tampered with his legal mail. This was the subject matter of grievance GWD-10530-08, see Logue Decl., Ex. K, which was denied as unfounded. The Superintendent's investigation revealed that Faulk admitted that the privileged correspondence in question was initially returned to him for a necessary address correction, and that it was properly returned to him a second time because he did not have sufficient funds in his account to cover the cost of the special handling service he requested. Moreover, Faulk acknowledged that the correspondence was returned to him from the mailroom, still sealed. He admitted in his complaint that he opened the mail prior to forwarding it again to the mailroom. Finally, it is undisputed that

-17-

Faulk eventually sent out the mail in question. Thus, the Superintendent found, there was no evidence to support the assertions that the mail in question was tampered with. CORC affirmed this determination. This claim is legally and factually baseless.

Faulk's related claim that prison officials failed to conduct a sufficient investigation is likewise without merit. Faulk contends that he knew the mail had been tampered with because he found a hair belonging to someone else in the envelope. Faulk "does not have a protected liberty interest in having his grievances investigated at the level of thoroughness that he desires, and therefore he can not assert a due process claim as to such failures." Torres v. Mazzuca, 246 F. Supp.2d 334, 342 (S.D.N.Y. 2003).

### I. Mishandling of Legal Papers (Complaint, ¶¶ 61-70, 73-74)

Plaintiff also contends that Kull, Linda Janish, and Andrew Trzcinski mishandled his legal papers. This was the subject of grievance GWD-10631-08, in which Plaintiff asserted that he paid fees for a notary service and copying, but did not receive his documents. Following an investigation, it was determined that Plaintiff apparently advised the Inmate Grievance Program ("IGP") Supervisor that he had received the copies in question. Also, the notary public informed the IGP Supervisor that the notary services had been provided to Faulk. Finally, a copy of Faulk's signed

-18-

disbursement for the copies and notary service stamped "Completed Law Library" is also on file. The CORC ultimately affirmed the Superintendent's determination. There is no merit to this claim.

### J.   Failure to Process Grievances

Faulk asserted in one of his grievances (COLII-15736-08, filed December 18, 2008) that he had filed three grievances on November 25, 2008, while he was at Gowanda Correctional Facility, and that these grievances were not addressed. According to Faulk, these grievances concerned his dental needs; an overcharge by the mailroom; and denial of the right to attend his scheduled TAC hearing. See Logue Decl., Ex. N.  Official at Gowanda conducted an investigation and found no record of these grievances, and the Central Office Review Committee ("CORC") affirmed, finding no record of those three grievances being filed. Instead, Faulk had only filed one grievance at Gowanda after November 1, 2008 (GWD-10631-08), which was answered by CORC on January 28, 2009. See id. CORC advised Faulk that he could initiate a Freedom of Information Law request to try to obtain documents pertaining to these alleged grievances. However, it does not appear that Faulk ever did so. Faulk's claim of a failure to investigate, based solely on his conclusory assertions, is insufficient to raise a genuine issue of material fact.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Dkt. #23) is granted, and the Complaint (Dkt. #1) is dismissed in its entirety with prejudice. Plaintiff's Cross-Motion for Summary Judgment (Dkt. #32) is denied with prejudice. The Clerk of the Court is directed to close the case.

**SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         July 19, 2012